## VOLANT vs. LAMBERT.

APPEAL from the court of the first district

PORTER, J. delivered the opinion of the court. The petitioner states, that in the year 1820, he purchased a negro boy named Robert, from Julie Lambert; that in the year 1821, while he was in peacable possession of this slave, he was suddenly and clandestinely taken from him and carried into the state of Mississippi; that he has there been found in the possession of one Richard Terrill, who refuses to give him up, and that the petitioner has been obliged to commence suit for him.

The article in the constitution of the U.S. relative to fugitive slaves, does not apply to a case where a right of property is claimed in them by a citizen of the state where he is found.

Whether the vendor of a slave in this state, warrants a good title according to the laws of another state into which the slave is

Eastern Dist.
*March*, 1828.

VOLANT
*vs.*
LAMBERT.

removed?
*quere.*
Warranty of title in a slave is not limited to title with possession, but extends to cases where possession is lost, and the vendee is compelled to bring suit for him.

The petition concludes with a prayer, that the defendant may be notified to go and defend the suit in the state of Mississippi, and that in case the plaintiff should fail in the same, that she be condemned to pay the price she received for the slave, viz: $732, the costs of the suit, those of the present action, and all such other damages as may be suffered by the petitioner.

The defendant pleaded, that the disturbance complained of, was not yet such a one as the warranty in her act of sale made her responsible for. But that to guard against the consequence of a judgment in the state of Mississippi against her vendee, by which she might become liable, she prayed that Peter K. Wagner, from whom she purchased, might be cited to answer this action, and condemned to pay the petitioners the amount of any loss they might sustain by the eviction of said slave.

Before any proceeding was taken against Wagner on this demand in warranty, the cause was tried in the court, and judgment rendered against the defendant for the sum of $732, with interest from judicial demand, and $24 90 cents, the costs of the suit against the plaintiff in the state of Mississippi.

VOLANT
vs.
LAMBERT.

Subsequent to this decree, the defendant took a judgment by default against Wagner, which, on his motion, was set aside, and an answer filed by him, in which, after a general denial, he pleaded, that he purchased the slave in question from H. H. Gurley, for the price of —— dollars, and prayed, that said Gurley might be cited in warranty, and in case the defendant recovered of this respondent, that he should have judgment against his vendor for the purchase money, with damages and costs.

In a supplementary answer, he stated that he had committed an error in alleging that he purchased from Gurley, that on the contrary, his vendor was one Jasper Lynch, whom he prayed might be cited, and against whom judgment might be rendered in case the defendant recovered from him.

Lynch appeared and answered, that he had bought from Gurley, whom he required to be called in warranty, to defend the right and title to the slave.

Gurley pleaded:

That Volant, the plaintiff, could not recover from Lambert, nor Lynch from the defendant, because he only warranted the slave against legal demands, when it appears by the

Eastern Dis.
March, 1828.

VOLANT
*vs.*
LAMBERT.

allegations in the petition, that the slave was surreptiously taken from Volant's possession and carried out of the state:

That he bound himself to assure a good and legal title to the slave, and that he is prepared to do so, should a suit be brought against a proper person, but that he was not bound to defend the suit against Terrill.

That the petitioner lost the slave by his own neglect, and not for want of title; that if the property sold was feloniously taken out of his possession, he should have proceeded by a criminal prosecution, and have had the property brought back within this state.

And that he bought the slave from one Sarah Mason, now deceased, whose heirs he prayed might be cited in warranty, and be condemned to pay him whatever sum Lynch might recover.

The court below decreed, that the defendants should recover from Wagner the sum of $500, being the price paid by her for the slave; that Wagner should have judgment against Lynch for $800, being the amount the former paid to the latter, and that Gurley should pay Lynch the same sum, with costs. From this judgment Gurley has appealed.

In this court he has alleged several errors in it:

1st. That judgment has been rendered against him for 800 dollars, when it appears he sold the slave to Lynch for 500 dollars. In this position he is certainly correct, and should we find on examining the other points in the case, that he is at all liable: this error must be corrected. *Vol.* 2, 466.

2d. That the sale from Wagner to the defendant does not appear on the record; that the judgment against him is erroneous; and that there is no evidence to connect the sale made by the appellant, with the slave which was recovered by Terrill in the state of Mississippi.

Wagner, if he had appealed, might have complained of the correctness of the judgment rendered against him. The appellant has nothing to do with the defect in the proof, except as presenting the case without evidence to shew, that the slave he sold, is the same of which the defendant was evicted. We think, however, the record exhibits sufficient proof of that fact under the pleadings. Lynch, who sold to Wagner, does not deny it; and the appellant himself does not put it in issue.

The appellant's next position is, that the last vendee, who was plaintiff in the suit in Mississippi, lost the slave by his own neglect; that he should have reclaimed him as a fugitive, or as having been stolen.

There is no evidence to shew the slave was stolen, or that Terrill got possession of him feloniously.    But there is abundant proof to the contrary, in the judgment rendered by a court of competent jurisdiction, declaring the property to be in his possession.    The article in the constitution of the United States does not apply to a case where the citizens of another state, whose laws recognize slavery, set up a title to a slave found within its limits.

The only question in the cause of any importance, is in relation to the effect of the judgment rendered in the state of Mississippi.    The appellant contends he only warranted a good title, according to the laws of this state, and that the adjudication under the laws of another country does not falsify the warranty.    If it were shewn in evidence, that by the laws of Mississippi, a different rule prevailed there, in respect to the right and title to property of this kind, from that which governs it here, and that a title which had originated in Louisiana, was

VOLANT
*vs*
LAMBERT.

declared bad by those laws, when it would have been good in this state; this question might be one of very serious consideration, at least it would be so in the judgment of the member of the court who now delivers its opinion.— But in the present case that is not shewn, and even if it were, we are bound to presume and believe, that the district court of the United States did not apply those laws to this case improperly. If the facts shewed Terrill's right to the slave to have been acquired in the state of Mississippi, anterior to any title having vested here, then the court did right to decide by these laws, for a court of Louisiana would have done the same thing. If, on the contrary, it was derived from purchase, gift, or descent, in this state, then, we presume, the court decided it by our laws, and, as it was a competent tribunal, its decision is conclusive, unless the vendor can shew that had he received notice of it, he could have given facts in evidence, which would have required a different judgment. That evidence has not been offered: and as to the objection that the vendee should have brought a possessory action, we do not know the laws of that state recognised or permitted such a proceeding; and if it did, we

are of opinion the warranty of title to a slave is not limited to title with possession; but is a warranty against all mankind, whether they are plaintiffs, or defendants. Again: every stipulation of the kind must be understood in relation to the subject matter in reference to which it is taken. Sellers of slaves know that they are liable to abscond, and that they may run into a state whose citizens may set up a title to them, and where, of course, the suits to recover them must be according to the modes of proceeding which the laws of that state sanction.

There is no error, therefore, in the judgment of the court below, except so far as it relates to the sum which the appellant is condemned to pay, and in not giving judgment against his vendors.

It is therefore ordered, adjudged and decreed, that the judgment of the district court as between Lynch and Gurley be annulled, avoided and reversed; that the said Lynch do recover of the appellant the sum of five hundred and eighty dollars, with costs of the court below; and that Gurley do recover of the heirs of Sarah Moore, cited in warranty, the sum

of five hundred dollars, with costs of the court of the first instance; those of appeal to be paid by Lynch the appellee.

Eastern Dis.
*March*, 1828.

*Mercier* for the plaintiff, *Canon* for the defendant.